IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| LONNIE M. RIPPS AND ROBERT S. RIPPS § <br> Plaintiffs § <br> § <br> v. § <br> § <br> § <br> TALISMAN ENERGY USA, INC. § <br> Defendant, § | | No. _____ <br> Jury Demand |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Lonnie M. Ripps and Robert S. Ripps complain of Defendant, Talisman Energy USA, Inc. as follows:

### I.   INTRODUCTION

1. Talisman Energy USA, Inc. owns working interests in approximately 4,500 oil and gas leases in the South Texas Eagle Ford shale play in which Plaintiffs own mineral rights. From at least June, 2013, Talisman Energy USA, Inc. has systematically failed and refused to pay Plaintiffs the full royalties due and owing according to their mineral rights and leases related thereto.

### PARTIES

2. Plaintiffs, Lonnie M. Ripps and Robert S. Ripps ("Plaintiffs") are citizens of the State of Texas and reside in Texas.

3. Defendant, Talisman Energy USA, Inc. ("Defendant" or "Talisman"), a Delaware corporation, is an oil and gas exploration and production company whose principal place of business is located at 50 Pennwood Place, Warrendale, Pennsylvania 15086.

Defendant's agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION

4. This Court has subject matter jurisdiction over this action in accordance with 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

## VENUE

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district and part of property that is the subject of the action is situated in this district.

## CONDITIONS PRECEDENT

6. All conditions have been performed or have occurred.

## FACTS

7. Plaintiffs own mineral rights and interests in an oil and gas lease in the South Texas Eagle Ford shale play ("Eagle Ford").

8. Defendant is an upstream oil and gas production company; an indirect subsidiary of Calgary, Alberta-based Talisman Energy Inc., ("TEI") which was acquired for $13 Billion by an affiliate of the Spanish integrated energy company Repsol S.A. on May 8, 2015.

9. Defendant entered the Texas oil and gas market and opened a Texas office when it acquired mineral rights under numerous oil and gas leases in the South Texas Eagle Ford shale ("Eagle Ford"). Plaintiffs own mineral interests in DeWitt County, Texas within the

Eagle Ford shale play including mineral interests leased to Defendant for development, production, sale and distribution.

10. Plaintiffs have entered into numerous Oil, Gas and Mineral Lease contracts. These contracts, either directly or as a result of assignment, provide for Defendant to develop the leased premises and produce, market and sell oil and gas in paying quantities. The contracts called for royalties to be paid to Plaintiffs for such oil and gas produced by and through the oil and gas lease contracts, to wit:

    a. Oil, Gas and Mineral Lease dated October 17, 2006 between Mrs. Alvin Ripps, AKA Lonnie M. Ripps, a widow, as Lessor, and Whiting Oil & Gas Corporation as Lessee, with Oil, Gas and Mineral Lease filed of record at Volume 180 Page 355 in the Official Public Records of DeWitt County, Texas. (see attached Exhibit A)

11. Upon Talisman's entry into the Texas oil and gas market, it reached a 50/50 joint venture agreement ("JVA" or "Agreement") with another global energy company, Statoil for the pursuit, management and development of oil and gas interests. In 2013, the Agreement was modified whereby the two entities agreed to share responsibility for drilling and operating wells within their combined Eagle Ford lease holdings. Terms of the modified JVA called for Statoil to serve as operator on the eastern portion and for Defendant to serve as operator on the western portion of the Eagle Ford Interests.

12. The Agreement provided that Defendant and Statoil each owned non-operating working interests in the leases on which the other entity served as the operator. In December 2015, Statoil and Defendant further amended their joint venture agreement to provide that

as of January 1, 2016, Statoil would serve as operator for all wells within the joint venture acreage, with Defendant retaining a non-operating working interest.

13. Defendant and Statoil agreed to divide all oil and gas production by, through and under the JVA on a 50-50 basis and to each pay royalty owners from their share of production, including royalties owing to Plaintiff. Pursuant to the JVA and Texas oil and gas law, the operating entity is responsible for reporting all required well production data to the State of Texas Railroad Commission and Texas Comptroller. Title 16, TEX. NAT. RES. Code.

14. Texas law requires that any entity paying mineral royalties must accompany the payment with a check stub from the payor containing details, *inter alia*, well identification, volume of production, price, decimal interest (the royalty owner's share of production from the drilling unit), expense deductions and taxes. The required check stub detail is intended to allow the royalty recipient to verify that the payment accords with the payors obligation under applicable leases. TEX. NAT. RES. Code §§91.501-91.502.

15. Shortly after entering the United States oil and gas market, Defendant recognized that its royalty payment accounting practices did not comply with applicable lease terms, was incompatible with the U.S. framework of privately owned fractional mineral interests and specifically were not well suited to the complex Texas-lease environment.

16. Simply stated, Defendant overestimated its capability to manage the complex issues inherent in the Texas oil and gas market. Leases may differ on the process, calculations, allowable deductions and payments as Texas represents one of the most complicated and sophisticated areas for oil and gas agreements.

17. Beginning no later than July 2013, Defendant's production amounts were consistently 20% smaller than those reported by Statoil for the same wells, royalty owners and time

periods. Beginning with checks attributable to the month of February 2015, the discrepancy between Defendant and Statoil appears to have increased.

18. Because the Agreement required Defendant and Statoil to share production and pay royalties on a 50-50 basis, Plaintiffs have now concluded that Defendant was shorting Plaintiffs' payments. Due to confusion in the information and format of Defendant's check stub, it was difficult if not impossible for Plaintiffs to determine the source of the difference in royalty payments.

19. Based on information and belief, beginning no later than July 2013 and unbeknownst to Plaintiffs, Defendant secretly implemented a scheme to alter wellhead production data received from Statoil by reducing measured production volumes arbitrarily by approximately 20% (the "Skim"). Due to confusion in the information and format of Defendant's check stub, it was difficult if not impossible for Plaintiffs to detect the Skim.

20. After the application of the Skim, the reduced production data was uploaded into Defendant's royalty payment accounting system and used to pay royalty owners a reduced royalty amount. Based upon information and belief, Defendant increased the Skim to approximately 30% in February 2015.

21. Defendant has attempted to explain away the Skim by contending that in the transporting and marketing process, certain volumes of condensate (light oil) are predictably lost in the transportation stream and do not qualify for royalty payments - "shrinkage."

22. Shrinkage refers to the decrease in volume of condensate caused by release of solution gas and/or evaporation of the liquid. The Texas Railroad Commission (RRC) defines extraction loss as "shrinkage in volume due to the removal of liquefiable hydrocarbons." Shrinkage attributable to a given well is not a static percentage and there is no domestic

oil industry standard or common practice which allows for application of a fixed shrinkage factor to reported volumes of crude oil or condensate.

23. Based upon information and belief, Defendant's own personnel concluded that shrinkage, if applicable at all, could never approach the 20% Skim, and certainly never 30%.

24. In employing the Skim for the purpose of shorting royalty payments to Plaintiffs, Defendant engaged in actions that were arbitrary, capricious and in bad faith. Regardless of whether the production volume is measured at the well head, after separation or at the point of sale, under no circumstances do Plaintiffs leases permit the aforementioned Skim.

25. On information and belief, Plaintiffs allege that Defendant has also arbitrarily manipulated reported production volumes and royalty payments from joint venture wells operated by Defendant itself prior to calculating royalty payments to Plaintiffs.

26. Prior complaints to Defendant by Plaintiffs or those similarly situated about the aforementioned discrepancies between royalty checks from Defendant and Statoil, have been ignored or the response has been misleading.

27. Defendant has neither disclosed the manipulation of production volumes and resulting reduction in royalty payments to Plaintiffs nor made restitution to royalty owners for payment shortages attributable to the Skim.

28. Based upon information or belief, Defendant continues to short Plaintiffs by 20 – 30% on royalties attributable to wells operated under the JVA which, as of January 1, 2016 includes all wells and royalty owners within the JVA.

29. In the absence of express language in the oil and gas lease, the Texas Natural Resource Code codifies the timing of royalty payments. Defendant's manipulation of production

volumes and the reduction in royalty payments results in all payments being untimely as well as incorrect.

## EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

30. Plaintiffs incorporate by reference all preceding paragraphs.

31. Talisman arbitrarily and unilaterally manipulated royalty owner payments by reducing production volumes and then obfuscating such manipulation through joint venture, sale and distribution and price point agreements for its share of oil and gas production.

32. Talisman intentionally concealed the actions herein described in the forgoing paragraphs to ensure the continuation of those activities and forestall legal action.

33. Without access to the Development Agreement, well production run sheets and gauge reports, and Talisman's sale and distribution agreements, Plaintiffs would be both unable to determine the extent and nature of Talisman's wrongful conduct nor the financial harm suffered as a result of such conduct.

34. By its very nature, Talisman's activity, as alleged herein, was self-concealing.

35. As a result, Plaintiffs had no knowledge of Talisman's deceitful conduct and could not have discovered same by the exercise of due diligence.

36. As a result of Talisman's fraudulent concealment of its conduct, and the self-concealing nature of its acts, Plaintiffs assert the tolling of the applicable statute of limitations affecting the rights of the causes of action asserted by Plaintiffs.

37. Talisman is hereby equitably estopped from asserting that any otherwise applicable limitations period has run.

## THE DISCOVERY RULE

38. Plaintiffs did not discover, nor should Plaintiffs have, reasonably discovered Talisman's wrongful conduct, nor the harm suffered by Plaintiffs, until Talisman's conduct was revealed by former Talisman employee(s) in 2015.

39. The discovery rule applies to toll the statute of limitations as to all causes of action against Defendant and other responsible parties, if any, identified by discovery in this matter.

## CLAIMS
## COUNT 1
## BREACH OF CONTRACT

40. Plaintiffs incorporate by reference all preceding paragraphs.

41. Plaintiffs executed valid and enforceable contract(s) in the form of oil and gas leases, directly or through assignments, with Defendant. (See Exhibit A)

42. Plaintiffs, as party to the leases and assignments, are the proper parties to enforce the terms of the relevant leases and assignments and have performed, or substantially performed, any and all necessary conditions precedent, dependent obligations, and/or dependent covenants owed under the relevant leases and assignments.

43. Plaintiffs are, and have been, entitled to Defendant's performance of its obligations under the relevant leases and assignments.

44. Defendant's arbitrary and capricious manipulation and reduction of production volumes and thereby payment of royalties to Plaintiffs constitutes a material breach of the applicable oil and gas leases.

45. Defendant has materially breached its contractual obligations to Plaintiffs, including the express terms set out above in the Facts and/or the implied covenant to market the

Plaintiffs' minerals in good faith. Examples of such breaches include but are not limited to the following:

   a. Reducing production volumes of oil, other liquid hydrocarbons or liquefiable hydrocarbons and/or natural gas produced from the relevant lands by as much as 20% - 30% without notice or contract support under the existing oil and gas lease contract;

   b. Failing to pay the agreed royalty payments for oil, other liquid hydrocarbons or liquefiable hydrocarbons produced from the relevant lands as provided for in the oil and gas lease contract, by failing to pay royalties on one-fifth (1/5) of said products based on the market price then prevailing in the field where produced on the date of purchase.

   c. Failing to pay royalties on all natural gas produced from the relevant lands as provided for in the oil and gas lease contract by, including but not limited to, failing to pay royalties on one-fifth ($1/5^{th}$) of the amount realized from the sale of said products produced from the leased premises or lands pooled therewith.

   d. Deducting from Plaintiffs' royalty payments costs of gathering, marketing, transportation, dehydration, treating, compressing, or any other charges for making the oil or gas ready for sale.

   e. Requiring Plaintiffs to execute a division order that provides for anything in addition to a stipulation of Plaintiffs' royalty share.

   f. Refusing to provide Plaintiffs' upon request, among other materials, relevant and related records and data pertaining to the production, transportation, sale, and marketing of the production from the relevant lands, including but not limited to

sales contracts concerning oil, gas and other minerals from any well on the leased premises.

46. Defendant's contractual breaches have caused financial loss to Plaintiffs for which they are entitled to recover actual damages, consequential damages, interest, penalties, attorneys' fees, termination of leases, and any other legal or equitable relief deemed appropriate by the Court.

## COUNT 2
## FRAUD

47. Plaintiffs incorporate by reference all preceding paragraphs.

48. Defendant made material misrepresentations and omissions to Plaintiffs regarding volumes of production from the wells and other information upon which royalty payments are calculated with the intent to mislead Plaintiffs as to amounts of royalties owed them and to induce them to accept royalties less than what they were owed.

49. Defendant further engaged in a scheme to obfuscate the Skim by employing a check stub that was confusing and which did not comply with Texas law.

50. By employing the Skim, Defendant concealed from Plaintiffs information relevant and material to royalties owed, so that Defendant could earn additional and improper profits at the expense of Plaintiffs.

51. Plaintiffs have been deceived as to the true amount of royalties owed by Defendant and therefore have been financially damaged, entitling Plaintiffs to recover actual damages, consequential damages, interest, penalties and punitive damages and any other relief deemed appropriate by the Court.

## COUNT 3
## CONVERSION

52. Plaintiffs incorporate by reference all preceding paragraphs.

53. Oil, gas and other minerals severed from realty become personal property that can be converted.

54. Plaintiffs own personal property in the form of oil, gas and other minerals severed from realty by Defendant and is an interest owner entitled to royalties from the sale of oil, gas and other minerals by Defendant.

55. Defendant has wrongfully exercised dominion and control over Plaintiffs' personal property by failing to pay royalties owed to Plaintiffs from the sale of oil, gas and other minerals owned by Plaintiffs in a manner inconsistent with Plaintiffs' rights under the oil and gas lease contract.

56. Defendant's conduct was of a wanton and malicious nature.

57. Plaintiffs are entitled to recover actual damages, exemplary damages, interest, and court costs as a result of Defendant's conduct.

## COUNT 4
## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

58. Plaintiffs incorporate by reference all preceding paragraphs.

59. Defendant owed Plaintiffs certain obligations resulting from covenants and duties implied by law, including implied covenants and duties to properly account to the royalty owners for the royalties owed to them; to deal fairly and in good faith with the royalty owners; and/or to otherwise act as a reasonably prudent operator, taking into account the interests of the royalty owners.

60. The above-described wrongful conduct constitutes a breach of the implied covenants and duties owed by the Defendant to the royalty owner Plaintiffs.

61. Plaintiffs have been damaged as a direct and proximate result thereof and are entitled to recover actual damages, consequential damages, interest, penalties and punitive damages from Defendant, together with any other relief deemed appropriate by the Court.

### COUNT 5
### UNJUST ENRICHMENT

62. Plaintiffs incorporate by reference all preceding paragraphs.

63. Plaintiffs provided for Defendant valuable materials in the form of oil, other liquid hydrocarbons or liquefiable hydrocarbons and/or natural gas.

64. Defendant accepted oil, other liquid hydrocarbons or liquefiable hydrocarbons and/or natural gas from Plaintiffs.

65. Defendant had reasonable notice that Plaintiffs expected compensation for the oil, other liquid hydrocarbons or liquefiable hydrocarbons and/or natural gas provided, but did not compensate Plaintiffs for those materials.

66. Plaintiffs are entitled to recover actual damages for the reasonable value of the materials, prejudgment and post judgment interest, court costs, and reasonable attorney fees.

### COUNT 6
### ACCOUNTING

67. Plaintiffs incorporate by reference all preceding paragraphs.

68. Damages alone will not compensate Plaintiffs for the loss of royalty payments consistent with the oil and gas lease contract; the facts and accounts presented are so complex that adequate relief may not be obtained at law; standard discovery procedures, such as requests for production, interrogatories, and subpoena duces tecum, may prove inadequate to provide Plaintiffs with the information sought regarding royalty payments.

69. Plaintiffs and Defendant have a contractual and/or fiduciary relationship with respect to royalty payments. The relevant leases and assignments impose on Defendant the duty to account to Plaintiffs with respect to oil and gas production and royalty payments.

70. Plaintiffs have strictly complied with the terms of the lease and come to the Court with clean hands. Plaintiffs, therefore, seek an accounting, whether under the relevant leases and assignments or, in the alternative, in equity, as follows:

71. For past and present monthly production volumes of oil, liquids, condensate, liquefied hydrocarbons and natural gas by well since July 2013 as reported to the Texas Railroad Commission, Texas Comptroller or other state or federal agency, to royalty owners by Defendant and by Statoil, as recorded by any third party vendor contracted by Defendant or Statoil to test, sample or record such volumes.

72. For past and present royalty payments made to Plaintiffs on the production of oil, liquids, condensate, liquefied hydrocarbons and natural gas production volumes, and substances.

73. For past and present deductions by category of expense or other deductions including but not limited to deductions for "shrinkage"; and for past and present information supporting any deduction or expense from or to production volumes or royalty payments.

## COUNT 7
## SECURITY INTEREST AND STATUTORY LIEN

74. Plaintiffs incorporate by reference all preceding paragraphs.

75. Plaintiffs' are interest owners who own an entire or fractional interest in oil or gas production at the time of severance, or a person who has an express, implied, or constructive right to receive a monetary payment determined by the value of oil or gas production or by the amount of production.

76. Plaintiffs' interest is evidenced by a deed, mineral deed, reservation in either, oil or gas lease, assignment, or any other such record recorded in the real property records of DeWitt County, Texas.

77. Defendant has signed an agreement to purchase oil or gas production, issued a division order, or made voluntary communication to Plaintiffs recognizing Plaintiffs as an interest owner with a right under real property law.

78. Defendant is an operator and engaged in the business of severing oil or gas production from the ground, whether for Defendant alone, only for other persons, or for the Defendant and others.

79. Defendant is a first purchaser and operator that received production proceeds from a third-party purchaser who acts in good faith under a division order or other agreement authenticated by Defendant under which Defendant collects proceeds of production on behalf of other interest owners.

80. Plaintiffs is entitled to a security interest and lien in oil and gas production, and also in the identifiable proceeds of that production owned by, received by, or due to Defendant pursuant to Texas Business and Commerce Code § 9.343.

## COUNT 8
## DECLARATORY JUDGMENT

81. Plaintiffs incorporate by reference all preceding paragraphs.

82. Plaintiffs are entitled to a declaratory judgment:

    a. enjoining Defendant from continuing with such wrongful acts, omissions, practices, and schemes; ordering Defendant to provide complete and accurate check stub information, as required by TEX. NAT. RES. Code § 91.502; Sec.

91.502. TYPES OF INFORMATION PROVIDED. Each check stub, attachment to a payment form, or other remittance advice must include:

i. the lease, property, or well name, any lease, property, or well identification number used to identify the lease, property, or well, and a county and state in which the lease, property, or well is located;

ii. the month and year during which the sales occurred for which payment is being made;

iii. the total number of barrels of oil or the total amount of gas sold;

iv. the price per barrel or per MCF of oil or gas sold;

v. the total amount of state severance and other production taxes paid;

vi. the windfall profit tax paid on the owner's interest;

vii. any other deductions or adjustments;

viii. the net value of total sales after deductions;

ix. the owner's interest in sales from the lease, property, or well expressed as a decimal;

x. the owner's share of the total value of sales before any tax deductions;

xi. the owner's share of the sales value less deductions; and

xii. an address and telephone number at which additional information regarding the payment may be obtained and questions may be answered.

b. terminating the applicable leases;

c. requiring Defendant to provide Plaintiffs, among other materials, relevant contracts and related records and data pertaining to the production, transportation, sale, and marketing of the production from the relevant lands;

    d. paying of all royalties and overrides on all of the natural gas liquids associated with production from the relevant lands without deduction or expense not expressly provided for within the oil and gas lease contract.

    e. granting Plaintiffs such other or additional declaratory and/or injunctive relief relating to such wrongful acts, omissions, practices, and financial/accounting schemes as may be deemed appropriate by the Court and;

83. Defendant has acted contrary to its obligations under the relevant leases and assignments. A substantial controversy of sufficient immediacy and reality exists between Plaintiffs and Defendant so as to warrant this Court's declaration on the matters presented. Plaintiffs and Defendant hold adverse legal interests.

## COUNT 9
## ATTORNEY'S FEES

84. Plaintiffs incorporate by reference all preceding paragraphs.

85. As a result of Defendant's actions and the need to protect their interests, Plaintiffs have retained the law firm of Provost Umphrey Law Firm LLP and The Freeman Law Firm to represent Plaintiff in this action. Plaintiffs have agreed to pay the law firm of Provost Umphrey LLP and The Freeman Law Firm attorneys' fees.

86. Plaintiffs seek recovery of all reasonable and necessary attorney's fees pursuant to Chapters 37 and/or 38 of the Texas Civil Practices and Remedies Code, and Tex. Nat. Res. Code §91.406 and, if applicable, specific contract provisions.

## REQUEST FOR JURY TRIAL

87. Plaintiffs demand a jury trial and tender the appropriate fee with this petition.

## REQUEST FOR RELIEF AND PRAYER

88. Wherefore, Plaintiffs request, that, upon final trial of this matter, judgment be entered for Plaintiffs against Defendant, awarding Plaintiffs all relief to which Plaintiffs are entitled as a result of the wrongful acts and omissions described herein, including, without limitation, the following:

89. A determination that Defendant breached obligations owed to Plaintiffs;

90. Actual and consequential damages;

91. Applicable statutory penalties;

92. Punitive damages;

93. Forfeiture of all profits associated with Defendant's wrongdoing;

94. Accounting of production, sales, deductions, expenses and royalty payments as more fully described herein.

95. Equitable and/or declaratory relief described above;

96. Termination of applicable leases;

97. Pre and post judgment interest at the highest rate allowed by law;

98. Statutory penalties and interest as provided at TEX. NAT. RES. Code §§91.401 - 91.404;

99. An award of attorneys' fees and expenses; and

100. All other further relief to which Plaintiffs are justly entitled.

Dated: March 29, 2017

Respectfully submitted,

**PROVOST★UMPHREY LAW FIRM, .L.P.**
490 Park Street
P.O. Box 4905
Beaumont, Texas 77704
(409) 835-6000
(409) 813-8605 (FAX)

By: /s/Bryan O. Blevins, Jr.
BRYAN O. BLEVINS, JR.
State Bar No. 02487300
SDTX Bar No. 347439
bblevins@pulf.com

**THE FREEMAN LAW FIRM, P.C.**
1770 St. James Place, Suite 120
Houston, Texas 77056
(713) 973-1000
(713) 973-1004 Fax
By: /s/ T. Ernest Freeman
T. Ernest Freeman
SBOT #07431600
SDTX Bar No. 15382
Stephen G. Scholl
SBOT #17801350
SDTX Bar No. 9425
ernest@thefreemanlawfirm.com
steve@thefreemanlawfirm.com

**ATTORNEYS FOR PLAINTIFF**